UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL ADAMS,

        Plaintiff,

vs.                                   Case No.  3:07-cv-438-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on June 10, 2004, alleging an inability to work since August 8, 2001.  (Tr. 65-68).  The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration.  (Tr. 50-54).  Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on June 1, 2005.  (Tr. 49).  The ALJ issued a decision denying Plaintiff's application on November 24, 2006.  (Tr. 12-23).  On appeal, a complete transcript of the hearing could

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 19).

not be provided, and the Appeals Council ("AC") remanded the case for a *de novo*

hearing.  (Tr. 258-68).  The second hearing was held on April 15, 2008.  (Tr. 357).

Subsequent to that hearing, Plaintiff filed an amended application on April 16, 2008,

alleging an inability to work since July 1, 2005.  (Tr. 247).  The ALJ issued a new

decision on August 6, 2008, denying Plaintiff's claims.  (Tr. 245-55).  The AC denied

Plaintiff's request for review on May 22, 2009.  (Tr. 241).  Plaintiff now seeks judicial

review of the ALJ's August 6, 2008 final decision under 42 U.S.C. § 405(g).

Accordingly, the matter is now ripe for judicial review.

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since July 1, 2005[2] due to degenerative arthritis in

the knees and left shoulder, degenerative arthritis of the cervical and lumbar spine,

hepatitis C, anxiety, and depression.  (Tr. 65-86; Doc. 17, p. 6-8).

### B.    <u>Summary of Applicable Evidence Before the ALJ</u>

Plaintiff was 53 years of age at the time the ALJ conducted the August 8, 2008

administrative hearing.  (Tr. 358).  Plaintiff has a GED and past work experience as a

maintenance dispatcher, truck driver, and street sweeper.  (Tr. 359, 361-64).

Plaintiff claims to be disabled since July 1, 2005, due to degenerative arthritis in

the knees and left shoulder, degenerative arthritis of the cervical and lumbar spine,

depression, anxiety, and hepatitis C.  (Tr. 65-86; Doc. 17, p. 6-8).  As Plaintiff does not

dispute the ALJ's findings with regard to his degenerative arthritis, the Court will limit its

---

[2] Subsequent to the hearing before the ALJ, Plaintiff amended his onset date from August 8, 2001 to July 1, 2005.  (Tr. 247).

discussion to the medical evidence regarding Plaintiff's depression, anxiety, and hepatitis C.

Plaintiff was diagnosed with hepatitis C sometime in early 2002.  (Tr. 88, 175). This diagnosis is well documented throughout Plaintiff's medical records.  Plaintiff's primary care physicians referred Plaintiff for a liver biopsy several times between 2004 and 2007, but Plaintiff was afraid of the procedure and refused to have a biopsy completed.  (Tr. 122, 138, 150, 175, 233, 238).  In March 2004, Plaintiff first reported to his doctors that he experienced fatigue, but he denied experiencing anxiety or depression.  (Tr. 149-50).  At all subsequent doctor appointments in 2004, Plaintiff denied experiencing fatigue, anxiety, or depression.  (Tr. 129, 131, 133, 141, 143, 147-48, 145).

Plaintiff met with consulting physician, Dr. C.V. Lazo, on December 8, 2004.  (Tr. 87).  Dr. Lazo noted Plaintiff had hepatitis C, with moderate elevation of liver enzymes, but no identifiable symptoms.  (Tr. 90).  Plaintiff did not thereafter report experiencing fatigue to his doctors until June 9, 2005, when he was again referred for a liver biopsy. (Tr. 121).

Plaintiff first reported feeling anxious and depressed, as well as fatigued, to his primary care physician, Dr. Charles Day at Murray Hill Family Practice Center, on June 24, 2005.  (Tr. 114).  In response, Dr. Day prescribed the anti-depressant medication, Zoloft.  (Tr. 115).  Plaintiff met with Dr. Byron Kolts at Shands in September 2005 for a consultation regarding his hepatitis C.  (Tr. 175).  Dr. Kolts, wrote in his report to Dr. Day that Plaintiff seemed "to suffer from chronic fatigue syndrome."  Id.  Under Plaintiff's past medical history, the doctor noted "anxiety, possibly even manic depressive."  Id.

At a routine check-up on October 14, 2005, Plaintiff again reported experiencing depression and fatigue.  (Tr. 110).  Under the section titled "Active Problems" in his report, Dr. Day noted Plaintiff had depression and an adjustment disorder with anxiety and prolonged depressed mood.  Id.  Dr. Day referred Plaintiff to psychiatry.  (Tr. 111).  At some time following this referral, Plaintiff began seeing Dr. Hazem Herbly in the psychiatry department at Shands.  (Tr. 86).

On November 3, 2005, during a pain consultation at Shands, the attending physician, Dr. Timothy Sternberg, noted depression under the section titled "past medical history" in his report.  (Tr. 170).  Plaintiff was prescribed Zoloft and Wellbutrin.  (Tr. 171).  Dr. Sternberg wrote in the report, under the "Review of Systems" section, that Plaintiff "is less social," "is also depressed," and "has trouble falling asleep and staying asleep."  Id.  Dr. Sternberg also noted, "Patient's affect is within normal limits" and his "[m]ood is pleasant."  (Tr. 172).  The doctor prescribed Nortiptyline to "promote a more restful, restorative sleep" and encouraged Plaintiff to engage in "consistent daily activity."  Id.

On May 17, 2006, Plaintiff visited Shands for another consultation with Dr. Kolts regarding his hepatitis C.  (Tr. 238).  In his report, Dr. Kolts listed depression and "adjustment disorder with anxiety and prolonged depressed mood" under the section titled "Active Problems."  Id.  Dr. Kolts wrote in his assessment:

> After reviewing Dr. Herbly's note and combining his observations with mine, I think this patient will have more risk and at this time less benefit from an attempt to start him on anti-hepatitis C treatment.  The patient has a deathly fear of the liver biopsy as well.  Until Dr. Herbly has strong confidence that this patient can tolerate the depressive side effects of Interferon, I will see the patient in six months and

> maybe offer a non-Interferon treatment when it becomes
> available.

Id.

At Plaintiff's check-up with Dr. Day on June 1, 2006, Plaintiff reported feeling

fatigued.  (Tr. 232).  However, a physical examination, an abdominal CT scan, and

laboratory studies revealed no significant problems associated with Plaintiff's hepatitis

C.  (Tr. 234-36).  The doctor noted in his report: "Hep C viral load is low.  Patient is very

afraid of biopsy.  Reconsider treatment in six months if Dr. Herbly feels patient can

sustain depressive effects of treatment."  (Tr. 233).  Plaintiff met with Dr. Day for

another check-up on June 30, 2006, and denied experiencing "easy fatigue."  (Tr. 230).

The doctor noted in his report, "[t]he depression is better."  (Tr. 231).

Plaintiff did not report experiencing depression, anxiety, or fatigue at any

subsequent check-up with Dr. Day through March 10, 2008, the date on the last medical

report in the record.  (Tr. 324, 326, 328, 330, 332, 334, 338, 341, 344, 346, 348, 351).

However, Dr. Eric Stewart, an attending physician filling in for Dr. Day, noted in his

report following a check-up with Plaintiff on February 22, 2007, that "Patient was denied

hepatitis C treatment due to severe depression – GI will reevaluate with Dr. Herbly's

recommendation."  (Tr. 334-35).  Also, depression was noted under the section

"Assessment" in Dr. Day's report from a check-up on February 11, 2008.  (Tr. 349).

According to his testimony at the administrative hearing on April 15, 2008, Plaintiff is no

longer taking any anti-depressant medication.  (Tr. 377).

C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through June 30, 2007.  (Tr. 249).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 1, 2005.  Id.  At step two, the ALJ found Plaintiff had the following severe

impairments: degenerative arthritis of the cervical and lumbar spine; degenerative

arthritis of the knees, bilaterally; and degenerative arthritis of the left shoulder.  Id.  At

step three, the ALJ determined Plaintiff did not have an impairment that  met or equaled

any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4.  (Tr. 250).

The ALJ further determined Plaintiff retained the residual functional capacity

("RFC") to perform a significant range of sedentary work.  (Tr. 251).  Specifically, the

ALJ found Plaintiff was able to:

> Lift and/or carry 10 pounds frequently and occasionally.  He
> can sit eight hours in an eight hour workday and stand two
> hours in an eight hour workday.  He can occasionally climb,
> balance, stoop, kneel, crouch and crawl.  He can have no
> concentrated exposure to heights or hazards.  He can
> occasionally use his left hand for fine and gross
> manipulations.  He can occasionally use his left lower
> extremity for foot controls.  He can occasionally push, pull
> and reach with the left upper extremity.  It is noted that the
> claimant is right hand dominate [sic].

Id.  In making this determination, the ALJ found Plaintiff's impairments could reasonably

be expected to produce the alleged symptoms.  (Tr. 252).  However, the ALJ found

Plaintiff's assertions concerning the intensity, persistence, and limiting effects of the

alleged symptoms were not entirely credible to the extent they were inconsistent with

the RFC assessment.  Id.

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during

the hearing to determine if Plaintiff could perform any of his past relevant work.  (Tr.

254).  The VE explained Plaintiff could perform his past work as a maintenance

dispatcher as the job is customarily performed in the national economy.  Id.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social

Security Act.  Id.

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

The district court will reverse a Commissioner's decision on plenary review,

however, if the decision applies incorrect law, or if the decision fails to provide the

district court with sufficient reasoning to determine the Commissioner properly applied

the law.  Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir.

1994).

**B.    Issues on Appeal**

Plaintiff challenges the ALJ's decision on two grounds.  First, Plaintiff contends

the ALJ's finding that Plaintiff can perform his past relevant work as a maintenance

dispatcher is not supported by substantial evidence because the VE's testimony was

inconsistent with the Dictionary of Occupation Titles (the "DOT").  (Doc. 17, p. 4-6).

Second, Plaintiff contends the ALJ failed to incorporate all of Plaintiff's limitations in the

hypotheticals presented to the VE. (Doc. 17, p. 6-8).

1.    **Whether the ALJ's reliance upon VE testimony to determine Plaintiff
can perform his past relevant work as a maintenance dispatcher is
supported by substantial evidence.**

Plaintiff argues the ALJ's finding that he can perform his past relevant work as a

maintenance dispatcher is not supported by substantial evidence because the VE's

testimony regarding Plaintiff's residual functional capacity conflicts with the DOT's

description of a maintenance dispatcher. (Doc. 17, p. 4-6).  The Eleventh Circuit has held

that, where there is a conflict between the VE's testimony and a job description in the

DOT, "the VE's testimony 'trumps' the DOT," and an ALJ may rely solely on the VE's

testimony without resolving the conflict.  Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir.

1999), cert. denied, 529 U.S. 1089, 120 S.Ct. 1723 (2000).  The court reasoned the DOT

was not the only source of admissible information regarding jobs, and "itself states that it

is not comprehensive." Id.  Subsequently, the Social Security Administration issued

Social Security Ruling  00-4p to clarify standards regarding the use of VEs and

vocational specialists ("VS").  SSR 00-4p provides in part:

> When there is an apparent unresolved conflict between VE
> or VS evidence and the DOT, the adjudicator must elicit a
> reasonable explanation for the conflict before relying on the
> VE or VS evidence to support a determination or decision
> about whether the claimant is disabled...Neither the DOT nor
> the VE or VS evidence automatically 'trumps' when there is
> a conflict.

SSR 00-4p.  SSR 00-4p further provides, "the adjudicator has an affirmative

responsibility to ask about any possible conflict between the VE or VS evidence and

information provided in the DOT." Id.  This means, under SSR 00-4p, the ALJ must

specifically ask the VE if there is a conflict and if the ALJ learns of a conflict, he is

required to discuss and resolve the conflict before relying solely on the VE's testimony.

However, following the promulgation of SSR 00-4p, a panel of the Eleventh Circuit

in an unpublished opinion, rejected the argument that SSR 00-4p modified Jones.  The

court held, "even assuming that an inconsistency existed between the testimony of the

vocational expert and the DOT, the ALJ did not err when, without first resolving the

alleged conflict, he relied on the testimony of the vocational expert." Miller v. Comm'r of

Soc. Sec., 246 F.App'x. 660, 662 (11th Cir. 2007).  The court acknowledged, "Social

Security Rulings are agency rulings published under the authority of the Commissioner

of the Social Security and are binding on all components of the administration." Id.

(quoting Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S.Ct. 885, 891 n.9 (1990)).

However, the court noted, "agency rulings 'do[ ] not bind this [C]ourt.'" Id. (quoting B.B.

v. Schweiker, 643 F.2d 1069,  1071 (5th Cir. Unit B Apr. 1981)).  Thus, according to Miller,

Jones remains binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-4p. Id.

Despite the holding in Miller, district courts in this circuit have inconsistently determined the obligations of the ALJ with respect to reconciling VE testimony with the DOT. For example, in Sollars-D'Annunzio v. Astrue, the ALJ relied upon VE testimony, which the plaintiff claimed conflicted with the DOT. Sollars-D'Annunzio v. Astrue, No. 5:08-CV-80-OC-GRJ, 2009 WL 302170, at *8 (M.D. Fla. Feb. 6, 2009). The VE affirmatively testified there were no conflicts between his testimony and the job description contained in the DOT. Id. at *9. The court held, "[t]he promulgation of SSR 00-4p does not...undo the rule in Jones nor does the ruling by its own wording mandate that an ALJ has a duty independently to investigate whether there is a conflict between the VE's testimony and the DOT." Id. at *10. Similarly, a subsequent decision out of the Middle District noted that an ALJ's failure to comply with SSR 00-4p would not warrant reversal because the ruling is not a regulation or statute and "does not have the force of law." Romeo v. Astrue, No. 8:09-CV-502-T-TGW, 2010 WL 1180357, at *2 (M.D. Fla. March 25, 2010). In Romeo, the court held the ALJ could reasonably find the VE's testimony consistent with the DOT even though the ALJ did not specifically inquire about any potential conflicts "because the expert stated the DOT number for each of the jobs he identified." Id. However, another decision from the Middle District held, "[i]t appears to be the current state of law in this circuit that the ALJ *must* inquire as to whether the VE's testimony is consistent with the DOT but, if it is not, an ALJ may rely upon the testimony of the VE without first resolving any conflict." Akins v. Comm'r of Soc. Sec., No. 6:08-CV-1575-ORL-DAB, 2009 WL 2913538, at *6 (M.D. Fla. Sept. 10, 2009

(emphasis added); see also Farley v. Astrue, No. 8:06-CV-2342-T-MAP, 2008 WL

360832, at *1 (M.D. Fla. Feb. 8, 2008) ("Because the ALJ failed to comply with SSR 00-

4p when he neglected to inquire on the record as to whether or not there was a

discrepancy between the vocational expert's occupational evidence and the Dictionary of

Occupational Titles (DOT), the matter is remanded for further administrative

procedures.").  In Akins, the court noted the ALJ is not required to independently verify

that the VE's testimony is consistent with the DOT by conducting a "searching inquiry

into the contents of the DOT."  Id.  However, the court found the ALJ's reliance on

testimony the VE incorrectly believed to be consistent with the DOT was error, and the

case was remanded for further proceedings.  Id. at *7.  "While the law allows for an ALJ

to *choose* to rely on testimony that conflicts with the DOT... the ALJ did not have a

choice in finding that the testimony was consistent with the DOT; he was misinformed."[3]

Id.

 Outside of the Middle District, there is also a lack of consensus regarding this

issue.  A recent decision of the Southern District of Florida followed the reasoning in

Miller and affirmed the Magistrate Judge's finding that the ALJ did not err by failing to ask

the VE about any possible conflicts between his testimony and the information provided

in the DOT.  Hurtado v. Astrue, No. 09-60930-CIV, 2010 WL 1850242 (S.D. Fla. May 7,

2010).  However, a recent decision in the Northern District of Florida held the ALJ erred

in not asking the VE whether there were any conflicts between his testimony and the

---

[3] But see Brijbag v. Astrue, No. 8:06-CV-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla.
Jan. 31, 2008) ("The ALJ need not independently corroborate the VE's testimony and should be
able to rely on such testimony where no apparent conflict exists with the DOT.").

DOT.  "An unexamined and unexplained erroneous expert opinion simply cannot be

substantial evidence in the record to sustain the Commissioner's decision ..."  <u>Accorsini</u>

<u>v. Astrue</u>, No. 4:09CV221-SPM/WCS, 2010 WL 1645117, at *10 (N.D. Fla. Mar. 18,

2010).

In short, there appears to be uncertainty as to whether the ALJ has a duty to

inquire into consistency, in how this duty must be fulfilled, and regarding the effect of a

VE's omission of conflicts versus his affirmative representation of consistency.

In the instant case, the ALJ asked the VE at the end of his examination whether

his testimony was consistent with the DOT.  The transcript of the hearing reflects the

following:

> ALJ: All right.  Now, was your testimony at all times herein
> consistent with the Dictionary of Occupational Titles except
> for the, except for where you testified as to the sit/stand
> option?
> VE: Yes, sir, it was.

(Tr. 400).  Accordingly, by asking at the end of the examination whether the VE's

testimony had at all times been consistent with the DOT, the ALJ complied with the first

requirement of SSR 00-4p.  The VE affirmatively stated there were no inconsistencies.

By its own terms, SSR 00-4p is violated only if there is an "*apparent* unresolved conflict"

and the ALJ fails to discuss and resolve the conflict.  SSR 00-4p (emphasis added).  In

the instant case, the undersigned is not convinced there is a conflict, apparent or

otherwise, between the VE's testimony and the DOT.

The ALJ found Plaintiff had the RFC to perform a range of sedentary work, with

certain limitations: "He can occasionally use his left hand for fine and gross

manipulations.  ...  He can occasionally push, pull and reach with the left upper extremity."

(Tr. 251).  Based on the VE's testimony, the ALJ found Plaintiff could perform the job of

maintenance dispatcher "even with the limitation of occasional gross and fine

manipulation of the left hand."  (Tr. 254).  The DOT describes the position of maintenance

dispatcher as requiring frequent reaching and handling and occasional fingering.  DOT,

Vol. 11, 4th Ed. (available online at DICOT 239.367-014).  Reaching is described as

"extending hand(s) and arm(s) in any direction."  Id. (available online at SCODICOT App

C).  Handling is defined as "seizing, holding, grasping, turning, or otherwise working with

hand or hands.  Fingers are involved only to the extent that they are an extension of the

hand."  Id.  Fingering is defined as " picking, pinching, or otherwise working primarily with

fingers rather than with the whole hand or arm as in handling."  Id.

In the hypothetical posed to the VE, the ALJ stated in the pertinent part:

"Any work activity this person could do is subject to the following conditions and

limitations: ... occasional gross and fine manipulation with the left hand; ... occasional

reach with the left upper extremity.  This person is right hand dominant."  (Tr.389-90).

The ALJ further clarified the term "occasional gross and fine manipulation" and defined it

as "grasping and feeling with the left hand which is zero to one-third of the time."  (Tr.

392).  Based on this hypothetical, the VE testified Plaintiff would be able to return to his

past work as a maintenance dispatcher.  (Tr. 391, 396).

Plaintiff contends the term "gross" manipulation, as used in the hypothetical, is akin

to handling and the term "fine" manipulation, as used in the hypothetical, is akin to

fingering.  (Doc. 17, p. 6).  Thus, according to Plaintiff, the hypothetical posed by the ALJ

limits Plaintiff to only *occasional* reaching, handling and fingering with the left arm and

hand.  Plaintiff argues this hypothetical conflicts with the DOT's description of a

maintenance dispatcher, which requires *frequent* reaching and handling.  (Doc. 17, p. 6).

As provided above, the definition of reaching refers to "extending *hand(s)* and *arm(s)*" and the definition of handling refers to "working with *hand or hands*."  This word choice implies the DOT acknowledges some jobs might require reaching or handling with only one hand and some might require reaching or handling with both hands.  Within each job description, the DOT does not specify whether one or both hands is required. Because the DOT is not comprehensive, the court in <u>Jones</u> found the ALJ "should supplement the DOT data with local information detailing jobs in the regional community. The VE provides this vital information."  <u>Jones</u>, 190 F.3d at 1230.  Thus, because the DOT is silent as to which jobs require working with one or both hands, the ALJ may gain this information via VE testimony, as was utilized in this case.

In the instant case, the VE accounted for Plaintiff's limitations in the left upper extremity when determining whether Plaintiff could return to his past relevant work and specifically considered whether the job required the use of both hands and arms.  The VE determined Plaintiff could not return to his past work as a truck driver or street

sweeper because those jobs required the use of both hands.[4]  However, the VE

determined Plaintiff could return to his past work as a maintenance dispatcher, based on

the fact that he is right-hand dominant and the limitations on reaching and handling were

exclusive to his non-dominant left hand.[5]

Therefore, the VE's testimony in this case does not conflict with the DOT, but

rather, properly serves as a supplement to the information contained in the DOT.

Accordingly, the undersigned finds the ALJ's reliance upon VE testimony to determine

that Plaintiff can perform his past job as a maintenance dispatcher is supported by

substantial evidence.

---

[4] The transcript of the hearing reflects the following:
> VE: ...[T]he sweeper operator would, as I understand it, now I
> have never operated a sweeper but I think it requires both legs
> and both arms.
> Plaintiff: Yes, ma'am...
> ...
> VE: — and in safety, you know, if you're going to drive safely for a
> company they may want you to use two hands at all times.
> ...
> ALJ: Okay, so it sounds to me like what you're saying is the driver
> and sweeper are eliminated due to at least occasional reaching —
> VE: Right, yes.
> ALJ: — with the left upper extremity. So, that leaves us with the –
> VE: Dispatcher.

(Tr. 393-94).

[5] The transcript of the hearing reflects the following:
> VE: Now when you said occasional, occasional use of the left
> hand with a dispatching job and he's right hand dominant that
> would –
> ALJ: Now, when I said occasional, I said occasional gross and
> occasional fine manipulation which is grasping and feeling with the
> left hand which is zero to one-third of the time.
> VE: Of the day.
> ALJ: Of the day or the time.
> VE: And he's right hand dominant.
> ALJ: Correct.
> VE: So, the dispatching job would still, that would be available.

(Tr.  392).

2.   **Whether the ALJ failed to include all of Plaintiff's impairments in the hypothetical posed to the VE.**

Plaintiff argues the ALJ failed to incorporate all of Plaintiff's limitations in the hypotheticals presented to the VE.  (Doc. 17, p. 6).  Specifically, Plaintiff argues the ALJ erred in failing to include limitations arising from hepatitis C, as well as anxiety and depression.  Id.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhard, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones, 190 F.3d at 1229). Where the hypothetical employed with the VE does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  Pendley v. Heckler, 767 F.2d 1561, 1561 (11th Cir. 1985) (quoting Brenam v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)).  However, an ALJ is not required to include in a hypothetical question, limitations that are not supported by the record or limitations the ALJ properly rejected.  Bouie v. Astrue, 226 F.App'x. 892, 894 (11th Cir. 2007) (quoting Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004)).  Further, "[t]he ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert."  Williams v. Astrue, No. 5:06CV221/RS-AK, 2008 WL 222683, at *8 (N.D. Fla. Jan. 25, 2008)  (citing Pendley, 767 F.2d at 1563).

Plaintiff is correct that the ALJ's hypothetical does not mention depression, anxiety, or hepatitis C.[6]  However, the ALJ did not find Plaintiff's depression, anxiety, or hepatitis C to be severe impairments and, as noted above, the hypothetical posed to the VE need not contain references to non-severe impairments.  Id.  Accordingly, to determine whether the ALJ posed a proper hypothetical, the Court must determine whether there is substantial evidence to support the ALJ's decision that Plaintiff's depression, anxiety, and hepatitis C were not severe.

At step two of the sequential analysis, the ALJ found Plaintiff had the following severe impairments: degenerative arthritis of the cervical and lumbar spine; degenerative arthritis of the knees, bilaterally; and degenerative arthritis of the left shoulder.  (Tr. 249).  At this step, the plaintiff has the burden of proving his impairments are severe.  McDaniel v. Bowen, 800 F.2d 1026, 1030-31 (11th Cir. 1986).  By definition, this inquiry is a "threshold" inquiry, and only the most trivial of impairments are to be rejected.  In the Eleventh Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  Id.  However, the severity of a

---

[6] In the instant case, the ALJ posed the following hypothetical to the VE:
> ... assume we have a hypothetical person the same age and education as the claimant with a similar vocational background. Any work activity this person could do is subject to the following conditions and limitations:  ... occasional climb, balance, stoop, kneel, crouch, and crawl; no continuous exposure to heights or hazards; occasional gross and fine manipulation with the left hand; occasional foot controls with the left lower extremity; occasional push/pull with the left upper extremity; occasional reach with the left upper extremity.  This person is right hand dominant. ... lift 10 pounds occasionally and frequently ...

(Tr. 389-90).

medically ascertained disability "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); see also SSR 85-28 ("At the second step ... medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

Here, the Court finds Plaintiff's claims regarding his depression, anxiety, and hepatitis C to be without merit. Plaintiff has not alleged any specific limitations on his working ability caused by these impairments and the undersigned was unable to locate any references to limitations during its review of the medical records. While there are many references to depression, anxiety, and hepatitis C in the record, there is no evidence that these conditions affect or limit Plaintiff's ability to work. (Tr. 90, 96, 110-11, 114-15, 121-22, 171, 175-76, 218, 226, 230, 233, 238, 249, 317-18, 335, 345). Further, Plaintiff himself points to no actual limitations on his working ability caused by depression, anxiety, or hepatitis C.

The record demonstrates a diagnosis of hepatitis C causing moderate elevation of liver enzymes, with no treatment and no identifiable symptoms. (Tr. 90, 96, 110-11, 121-22, 175-76, 218, 226, 230, 233, 238, 317-18, 335, 345). Plaintiff alleges he experiences fatigue, "presumably because of the hepatitis C." (Doc. 17, p. 7). However, there is substantial evidence to support the ALJ's finding that Plaintiff's fatigue was not severe. There are references to fatigue in Plaintiff's medical records, however, this information was self-reported, with no clinical observations or findings. (Tr. 110, 114-15, 121-22, 149-

50, 175, 232-33).  Plaintiff refused to have a liver biopsy due to a fear of needles, so it is difficult to know how hepatitis C has affected Plaintiff's liver.  (Tr. 122, 138, 175, 233, 238).  Physical examination, an abdominal CT scan, and laboratory studies revealed no significant problems associated with Plaintiff's hepatitis C.  (Tr. 234-36).  Further, the ALJ determined Plaintiff's testimony regarding his fatigue was not credible.  (Tr. 253).  The record supports the ALJ's finding that "[t]here was no evidence of fatigue of the frequency or severity that would preclude the claimant from working on a sustained basis."  (Tr. 253).

Plaintiff's medical records also reveal that he reported being anxious and/or depressed to his primary care physicians at various times between June 2005 and February 2008, however, no objective clinical observations or findings were recorded.  (Tr. 110-11, 114, 115, 171, 175, 230, 238, 349).  Plaintiff received anti-depressant medication and never reported adverse side effects.  Further, Plaintiff appeared to respond well to his medication and his primary care physician noted in June 2006 that "the depression is better."  (Tr. 231).  Following that notation, Plaintiff reported no nervousness, stress, anxiety, depressed mood, crying, suicidal thoughts, or excess changes in his sleep/insomnia at any subsequent check-up.  (Tr. 326, 328, 330, 332, 334, 344, 346).  Further, according to his testimony at the administrative hearing, Plaintiff is no longer on anti-depressant medication.  (Tr. 377).  The ALJ utilized the Psychiatric Review Technique Form and determined Plaintiff's depression did "not have more than a minimal effect on the claimant's ability to perform work-related activities."  (Tr. 250).  The Court finds this determination is supported by substantial evidence.

Finally, Plaintiff has also failed to allege any limitations on his working ability arising from depression.  Rather, Plaintiff argues there is a correlation between his hepatitis C and

Page 20

depression, in that he cannot receive treatment for hepatitis C due to his depression. (Doc. 17, p. 7-8).  Plaintiff is correct that he was denied Interferon treatment for hepatitis C because of his reported depression.  (Tr. 233, 238, 335).  However, as stated previously, Plaintiff's hepatitis C does not appear to impact his ability to work, so Plaintiff's inability to receive Interferon treatment due to depression is not relevant.

To classify an impairment as severe, there must be evidence in the record that shows the impairment will interfere with a claimant's work activities.  See McCruter, 791 F.2d at 1547-48.  Without any evidence showing how his depression, anxiety, or hepatitis C affected Plaintiff's ability to work, there is no basis for finding these impairments severe. Therefore, the Court concludes the ALJ did not err in finding Plaintiff's depression, anxiety, and hepatitis C were not severe impairments and failing to include any reference to them in the hypothetical posed to the VE.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  _19th_  day of August, 2010.


_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record